# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| JENNETTE WESTFALL, | : | Case No. 3:18-cv-28 |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | Magistrate Judge Sharon L. Ovington |
| | : | (by full consent of the parties) |
| | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

## DECISION AND ENTRY

## I.     Introduction

Plaintiff Jennette Westfall has attempted for over ten years to establish her

eligibility for period of disability, Disability Insurance Benefits, and Supplemental

Security Income.  She applied for benefits in March 2008, asserting that she has been

under a disability since March 2006.  Her applications were denied initially and upon

reconsideration.  She appealed and, after a hearing, Administrate Law Judge (ALJ) Carol

K. Bowen found she was not eligible for benefits because she was not under a disability.

Plaintiff brought a previous action in the United States District Court for the

Southern District of Ohio.  The Court found that the ALJ improperly evaluated Plaintiff's

treating physician's opinion, vacated the Commissioner's non-disability finding, and

remanded Plaintiff's case to the Commissioner for further consideration.  *Westfall v.*

*Colvin*, 3:12-cv-293, 2013 WL 4500032 (S.D. Ohio July 16, 2013) (Ovington, M.J.)

*report and recommendation adopted*, 2013 WL 4500032 (S.D. Ohio Aug. 21, 2013) (Rose, D.J.).

Upon remand, ALJ Elizabeth A. Motta held a hearing and found that Plaintiff was ineligible for benefits. But Plaintiff persisted. She returned to the United States District Court for the Southern District of Ohio where, upon the parties' joint motion for remand, the Court vacated the ALJ's non-disability finding and ordered the case again be remanded to the Commissioner. *Westfall v. Comm'r of Soc. Sec.*, 3:15-cv-405 (S.D. Ohio May 12, 2016) (Rice, D.J.).

Upon remand—and at issue in the present case—ALJ Mark Hockensmith, after a hearing, concluded that Plaintiff was not eligible for benefits because she is not under a "disability" as defined in the Social Security Act.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #10), and the administrative record (Doc. #6). Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ Hockensmith's non-disability decision.

## II.     Background

Plaintiff asserts that she has been under a "disability" since August 10, 2006. She was thirty-five years old at that time and was therefore considered a "younger person"

under Social Security Regulations.  *See* 20 C.F.R. §§ 404.1563(c), 416.963(c).  She has a

high school education.  *See id.* §§ 404.1564(b)(4), 416.964(b)(4).[1]

A.     **Plaintiff's Testimony**

Plaintiff testified at the hearing before ALJ Hockensmith that her health problems

began after her head-on collision with a garbage truck.  (Doc. #6, *PageID* #s 1100-01).

After the accident, Plaintiff began seeing her family-care physician, Dr. Menendez, more

frequently—about every three months.  *Id.* at 1101.  Dr. Menendez usually spends fifteen

to thirty minutes with her at each appointment.  *Id.* at 1102.  He does full checkups and

blood work.  *Id*.  Additionally, he refers her to specialists, such as Dr. Flaugher,

Plaintiff's rheumatologist; receives reports from them; and discusses their reports with

Plaintiff.  *Id.* at 1101-02.  He has been Plaintiff's family-care physician for thirty years.

*Id.* at 1101.

Plaintiff had cervical-fusion surgery in October 2006.  *Id.* at 1096.  She cannot

turn her neck to look up, down, or to the side.  *Id.* at 1092.  Instead, she has to move her

entire body to look in a different direction.  *Id*.  If she tries to turn her neck, she has pain

down her shoulders, arms, and back.  *Id*.  Despite her pain, her doctors are not able to do

anything else other than fuse more bones together.  *Id*.  However, they do not recommend

that because it will further restrict her ability to move her neck.  *Id*.  Plaintiff has had

radiofrequency treatments on her neck and upper back and has also undergone cervical

epidural injections.  *Id*. at 1104.  To alleviate her pain, Plaintiff tried stretching.  *Id.* at

---

[1] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

1097.  However, she ended up in the emergency room twice with excruciating pain so she stopped.  *Id.* at 1097-98.  "So there's really not anything I can do … to relieve the pain." *Id.* at 1098.

Plaintiff has a hard time sitting because of her back.  *Id.* at 1095.  She cannot bend and cannot get off the floor without help or difficulty.  *Id.*  She does not use a computer. After being on her smart phone after five to ten minutes, she "can't do it anymore."  *Id.* at 1093.  She testified that she smokes, so when she goes outside her house to smoke, that is the time that she reads, "so it's like ten minutes maybe."  *Id.* at 1094.

Plaintiff has trouble with her knee as well.  She had a left knee arthroscopy in January 2007.  *Id.* at 1096.  Her doctors wanted to do surgery on her knee again but she first had to have surgery on her right Achilles tendon.  *Id.* at 1097.  She has had knee injections and has gone through physical therapy.  *Id.* at 1104.  Nonetheless, she has excruciating pain when she uses or bends her leg.  *Id.* at 1095.  She also has difficulty walking up or down stairs because she cannot put all of her weight onto her knee.  *Id.*

Plaintiff has problems with her hands.  She cannot use her fingers for long periods of time because she gets numbness and tingling in her pinky and ring finger.  *Id.* at 1094. She also gets sharp pain up her arm.  *Id.*  She often drops things if she tries to hold onto them for too long.  *Id.* at 1094-95.  Her doctors told her she has muscle atrophy in her hands.  *Id.* at 1105.

Plaintiff lives with her husband and son.  *Id.* at 1087.  She has a driver's license but only drives if she has to.  *Id.* at 1089.  She needs someone with her if she drives because she cannot turn her head.  *Id.*  Further, she is scared to drive because she gets

numbness in her hands, arms, and legs. *Id.* Plaintiff "can't really do hardly anything anymore." *Id.* at 1098. She mostly stays at home. *Id.* She tried to go to a car show with her husband and kids but after walking a few blocks, she was unable to walk back to the car. *Id.* She is able to go to the grocery store. *Id.* Likewise, Plaintiff is able to clean but it takes her all day because she has to stop to take breaks. *Id.* at 1098-99. She also makes one meal per day. *Id.* at 1099. But her cooking is also limited. For instance, she cannot bend down to put casseroles in the oven or take them out. *Id.* She is able to pick up a gallon of milk but "five or ten pounds is quite a bit" for her. *Id.* at 1099-100. Her personal care is limited because she does not go anywhere. She is not able to do her hair. *Id.* at 1100. Plaintiff estimated that she could sit for fifteen to twenty minutes before she needs to get up or change positions. *Id.* at 1095. However, she cannot stand in one place, she has to walk a little, but she cannot go very far. *Id.* at 1095-96.

**B.     Carlos Menendez, M.D.**

Plaintiff's primary-care physician, Dr. Menendez, has treated Plaintiff for various impairments including, for instance, chronic neck pain, right knee pain, back pain, wrist pain, obesity, and depression. *Id.* at 362-410, 443-67, 564-604, 864-94, 1582-1872. Dr. Menendez provided the opinions at issue in the present case.

In June 2008, Dr. Menendez completed a questionnaire regarding Plaintiff's conditions. He noted that Plaintiff had neck and chest pain of severe intensity. She experienced significant muscle spasms to her paracervical muscles and her cervical spine range of motion was limited in all planes. *Id.* at 362-63.

A few months later, in October 2008, Dr. Menendez reported that Plaintiff has

5

osteoarthritis and depression.  He opined that Plaintiff is unable to sit or stand longer than

fifteen minutes without interruption.  *Id.* at 446.  She cannot stoop, climb, bend, or look

up or down.  *Id.* She cannot lift, push, or pull more than ten pounds.  *Id.*  Further, she has

poor memory and concentration and is unable to tolerate stressful environments.  *Id.*

     In December 2008, Dr. Menendez opined that Plaintiff was totally disabled.  *Id.* at

587.  In February 2009, he indicated that Plaintiff continued to suffer from chronic pain

and disability and her condition was permanent.  *Id.* at 585.  Plaintiff's neck had reached

maximal medical benefit from her medications.  *Id.*  She may, however, need physical

therapy and epidural blocks in the future.  *Id.*  Dr. Menendez noted that Plaintiff also had

a herniated disc that might need future surgical intervention.  *Id.*

## III.    **Standard of Review**

     The Social Security Administration provides Disability Insurance Benefits and

Supplemental Security Income to individuals who are under a "disability," among other

eligibility requirements.  *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42

U.S.C. §§ 423(a)(1), 1382(a).  The term "disability"—as defined by the Social Security

Act—has specialized meaning of limited scope.  It encompasses "any medically

determinable physical or mental impairment" that precludes an applicant from

performing a significant paid job—i.e., "substantial gainful activity," in Social Security

lexicon.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

     Judicial review of an ALJ's non-disability decision proceeds along two lines:

"whether the ALJ applied the correct legal standards and whether the findings of the ALJ

are supported by substantial evidence."  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399,

406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance …." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV.    The ALJ's Decision

As noted previously, it fell to ALJ Hockensmith to evaluate the evidence connected to Plaintiff's application for benefits.  He did so by considering each of the five sequential steps set forth in the Social Security Regulations.  *See* 20 C.F.R. §§ 404.1520, 416.920.  He reached the following main conclusions:

Step 1:    Plaintiff has not engaged in substantial gainful employment since August 10, 2006.

Step 2:    She has the severe impairments of degenerative disk disease of the cervical spine with the residuals of a spinal fusion; mild degenerative disk disease of the thoracic and lumbosacral spine; carpal tunnel syndrome; rheumatoid arthritis; the residuals of surgical repair of internal derangement of the left knee; and fibromyalgia.

Step 3:    She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:    Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work … subject to the following additional limitations: (1) must be able to alternate between sitting and standing at fifteen minute intervals while remaining at workstation; (2) no climbing of ladders, ropes, or scaffolds; (3) occasional climbing of ramps/stairs; (4) occasional balancing, stooping, kneeling, crouching, crawling; (5) occasional overhead reaching bilaterally; (6) no more than frequent twisting of the neck; (7) frequent handling and fingering bilaterally; (8) no work at unprotected heights or with dangerous machinery; (9) no exposure to vibration; (10) limited to simple, routine tasks that can be performed in a static work environment with few changes in routine; and (11) no fast-paced work or strict production quotas."

Step 4:    She is unable to perform any of her past relevant work.

Step 5:    She could perform a significant number of jobs that exist in the national economy.

(Doc. #6, *PageID* #s 1061-73).  These main findings led the ALJ to ultimately conclude

that Plaintiff was not under a benefits-qualifying disability.  *Id.* at 1073.

## V. Discussion

### A. Dr. Menendez's Medical Opinions

Plaintiff asserts that the ALJ—like the two previous ALJs—failed to properly

evaluate and credit Dr. Menendez's opinions.

Social Security Regulations require ALJs to adhere to certain standards when

weighing medical opinions.  "Key among these is that greater deference is generally

given to the opinions of treating physicians than to those of non-treating physicians,

commonly known as the treating physician rule."  *Rogers,* 486 F.3d at 242 (citations

omitted).  The rule is straightforward:

> Treating-source opinions must be given "controlling weight"
> if two conditions are met: (1) the opinion "is well-supported by
> medically acceptable clinical and laboratory diagnostic
> techniques"; and (2) the opinion "is not inconsistent with the
> other substantial evidence in [the] case record."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20

C.F.R. § 404.1527(c)(2)); *see Gentry*, 741 F.3d at 723.

If the treating physician's opinion is not controlling, "the ALJ, in determining how

much weight is appropriate, must consider a host of factors, including the length,

frequency, nature, and extent of the treatment relationship; the supportability and

consistency of the physician's conclusions; the specialization of the physician; and any

other relevant factors."  *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

The Regulations also require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Id.* (quoting Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). The goal is to make clear to any subsequent reviewer the weight given and the reasons for that weight. *Id.* Substantial evidence must support the reasons provided by the ALJ. *Id.*

ALJ Hockensmith first evaluated Dr. Menendez's opinion that Plaintiff is unable to look up or down. The ALJ found that his opinion is not supported by the record. Specifically, "The evidence shows that she does not lack the ability to look up or down, completely, but is limited in that area." (Doc. #6, *PageID* #1069). The ALJ pointed out that Plaintiff can still do things around the house and is able to lift a gallon of milk. Further, Plaintiff "testified that she has trouble turning her neck while driving, but is still able to do it. [She] further testified that she can look up and down, but that she has to move her body to do so." *Id.* The ALJ noted that electrodiagnostic studies done almost a year after her fusion surgery showed no cervical radiculopathy or neuropathy; an MRI of her cervical spine in January 2008 showed mild cord abutment at C4-5, but no high grade neurological compression; and in February 2014, an MRI showed mild stenosis at C3-4, not significant spinal stenosis or neural foraminal narrowing. The ALJ concluded, "As such, I did not see much support for a total inability to turn her neck." *Id.*

Substantial evidence does not support the ALJ's reasons for rejecting Dr. Menendez's opinion. The ALJ did not explain how Plaintiff's ability to cook, clean, and

lift a gallon of milk is related to her inability to look up or down. There is no indication from the record that Plaintiff's cooking, cleaning, or lifting required her to look up or down.

Further, Plaintiff did not testify that she could turn her neck while driving, she testified that she needs someone in the car with her when she drives because she *cannot* turn her head. *Id.* at 1089. She has to turn her body to see if something is coming from the other way and sometimes she still is not able to see. Likewise, she testified, "I can look up but I have to use my body to look up. I can't actually look up." *Id.* at 1092. She explained, "I don't have much turning in my neck. And it causes pain down my shoulders, my arms, … [and] my back …." *Id.* Turning her body is not the same as turning her neck; using her body to look up is not the same as using her neck to look up. And, the necessity of using her body to turn or look up instead of using her neck supports Dr. Menendez's opinion that she cannot look up or down.

Although the ALJ discussed some evidence, he failed to acknowledge Dr. Menendez's treatment notes that frequently and consistently document Plaintiff's severe neck pain. In April 2007, Plaintiff reported that her neck pain improved after surgery but then progressively worsened. *Id.* at 380. Upon examination, Dr, Menendez noted tenderness over her cervical spine and intense paracervical spasm. Further, she seemed to be in moderate pain. *Id.* Plaintiff returned to Dr. Menendez's office in December 2007 for severe neck pain. *Id.* at 459. In February 2008, after an MRI showed "a large bulging disk," Dr. Menendez indicated that he would refer her for surgery. *Id.* at 370.

11

Plaintiff saw Dr. Menendez twice in May 2008 for neck pain, once in August 2008, and once in October 2008. *Id.* at 364, 368, 449, 451.

Plaintiff also saw Sairam Alluri, M.D., at Tri-State Spine Care Institute for her severe pain in her neck and upper back. Upon exam, Dr. Alluri noted Plaintiff had significant tenderness in her spinous processes, paraspinal muscles, and trapezius muscles. *Id.* at 560-61. He performed several procedures, including radiofrequency neurotomy of medial branches at B C5, C6, C7; cervical epidural steroid injection at L C67 level; facet joint injections at L C45, C56, C67 levels and at B C56, C67 levels; and diagnostic block of median branches at B C5, C6, C7. *Id.* at 553-59. While some of the procedures helped for short periods of time, Plaintiff's pain continued to come back. *Id.* at 563. Dr. Alluri's treatment notes are consistent with and support Dr. Menendez's opinion.

There are also indications in the record that Plaintiff's pain may be the result of rheumatoid arthritis or fibromyalgia—neither of which would appear on an MRI. *Id.* at 1589, 1618-24; *see Rogers*, 486 F.3d at 243-44 ("unlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs.") (citing *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 820 (6th Cir. 1988); *Swain v. Comm'r of Soc. Sec.*, 297 F.Supp.2d 986, 990 (N.D. Ohio 2003)). This, again, indicates a lack of substantial evidence supporting the ALJ's conclusion that Plaintiff can turn her head and look up or down.

All is not yet lost for the Commissioner. The ALJ separately evaluated some of Dr. Menendez's other opinions. For example, he assigned Dr. Menendez's first opinion

"some weight" because he found "that her left knee issue would limit her to alternating between sitting and standing at fifteen minute intervals." (Doc. #6, *PageID* #1069). The ALJ assigned "little weight" to all of Dr. Menendez's other opinions." *Id.* He found that Dr. Menendez provided no objective support for his opinion that Plaintiff is totally disabled. Further, "The physician provided virtually no objective support for his functional limitations, but appeared to have based them solely on an uncritical acceptance of [Plaintiff's] subjective complaints." *Id.*

Substantial evidence does not support either of the ALJ's reasons for doubting Plaintiff's longtime treating physician. Dr. Menendez's notes contain detailed objective evidence of Plaintiff's impairments and limitations. And, this Court previously found, "much of what her treating specialists reported is, in fact, consistent with Dr. Menendez's opinion." *Westfall v. Colvin*, 3:12-cv-293, 2013 WL 4500032, at *12. For example (as Plaintiff pointed out the first time her case was before this Court), records indicate that "Plaintiff had significant muscle spasms, significant limitation of range of motion of her cervical spine on all planes, tenderness of her cervical spine, and decreased hand strength, decreased reflexes, crepitus of her knees, decreased range of motion of her knees, clutching and clicking of her knees, left knee instability, post-surgical knee weakness, and positive Hawkins on exams." *Id.* (internal quotation marks and citations omitted). This objective evidence supports Dr. Menendez's opinions regarding Plaintiff's functional limitations and inability to work.

The ALJ also discounted Dr. Menendez's opinions because they are conclusory and "have no bearing on *functional limits*." (Doc. #6, *PageID* #1069) (emphasis added). Puzzlingly, the ALJ also found, "The physician provided virtually no objective support for his *functional limitations*, but appeared to have based them solely on an uncritical acceptance of [Plaintiff's] subjective complaints." *Id.* (emphasis added). How can there be a lack of support for his functional limitations if his opinions have no bearing on functional limitations? As explained above, objective evidence from Dr. Menendez's notes and specialists' reports support Dr. Menendez's opinions.

The ALJ also rejected Dr. Menendez's opinions because the determination of disability is reserved to the Commissioner. Although treating source opinions on issues reserved to the Commissioner are not entitled to controlling weight or special significance, "opinions from any medical source on issues reserved to the Commissioner must never be ignored." Soc. Sec. R. 96-5p, 1996 WL 374183, at *2-3 (Soc. Sec. Admin. July 2, 1996). In evaluating a similar statement by an ALJ, the Seventh Circuit emphasized,

> The pertinent regulation says that "a statement by a medical source that you are 'disabled' or 'unable to work' does not mean that you are disabled." 20 C.F.R. § 404.1527(e)(1). That's not the same thing as saying such a statement is improper and therefore to be ignored, as is further made clear when the regulation goes on to state that "the *final* responsibility for deciding" residual functional capacity (ability to work—and so whether the applicant is disabled) "is reserved to the Commissioner." 20 C.F.R. § 404.1527(e)(2). And "we will not give any *special* significance to the source of an opinion on issues reserved to the Commissioner." 20 C.F.R. § 404.1527(e)(3).

*Bjornson v. Astrue*, 671 F.3d 640, 647-48 (7th Cir. 2012) (emphasis in original). Thus,

the fact that Dr. Menendez provided his opinion about Plaintiff's inability to work does

not properly serve as a ground for placing little weight on Dr. Menendez's opinion.

In sum, although ALJ provided some reasons for discounting Dr. Menendez's

opinions, his reasons do not constitute *good reasons* because substantial evidence does

not support them.

Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.[2]

**B.     Remand**

One issue remains. Plaintiff asks the Court to reverse the Commissioner's non-

disability finding and remand her case for payment of benefits. She asserts that proof of

disability is strong and there is no significant evidence to the contrary.

A remand is appropriate when the ALJ's decision is unsupported by substantial

evidence or when the ALJ failed to follow the Administration's own regulations and that

shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial

right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to

provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*,

378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's

opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the

plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific

---

[2] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of
Plaintiff's other challenges to the ALJ's decision is unwarranted.

reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see*

*Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm,

modify, or reverse the Commissioner's decision "with or without remanding the cause for

rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand

under sentence four may result in the need for further proceedings or an immediate award

of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th

Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or

where the evidence of disability is strong while contrary evidence is lacking. *Faucher v.*

*Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

In the present case, Plaintiff's applications for benefits have been pending for over

ten years. In that time, Plaintiff has endured three hearings and three decisions by three

different ALJs. And yet, all three ALJs failed to provide good reasons for rejecting Dr.

Menendez's opinions.[3] A remand for further proceedings would require a fourth decision

by an Administrative Law Judge (unless the Appeals Council remanded for benefits).

Plaintiff's recent medical records contain objective evidence that decidedly

supports Dr. Menendez's opinions. For example, Plaintiff's rheumatologist, Dr.

Flaugher, noted upon examination in August 2015 that Plaintiff was positive for swelling

in her right and left GH. She had Heberden's notes and Bouchard's nodes on her hands.

---

[3] Although Plaintiff's second case before the District Court was remanded upon the parties' joint motion, the parties specifically included in their motion and the Court ordered that "the Commissioner will reassess the medical opinions of record, including those of treating physician Dr. Menendez." *Westfall v. Comm'r of Soc. Sec.*, 3:15-cv-405, Doc. #11 (May 12, 2016 S.D. Ohio).

Both of her hips and knees were positive for pain.  She had decreased range of motion in her left knee.  On her right foot, her first through fifth metatarsophalangeal joints were positive for pain.  (Doc. #6, *PageID* #1650).  Dr. Flaugher documented similar objective findings in July 2016.  *Id.* at 1553.

Given the strong evidence of disability while contrary evidence is lacking, there is no legitimate reason to remand the case for further proceedings.  *See Wilder v. Apfel*, 153 F.3d 799, 804 (7th Cir. 1998) ("Given the obduracy evidenced by the action of the administrative agency on remand, we remand the case to the agency with directions that the application for benefits be granted."); *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992) ("Because of the medical record, we think it unconscionable to remand this eight year old case to the Secretary for further review."); *Berry v. Comm'r of Soc. Sec.*, 1:18-cv-207, 2019 WL 4743664, at *3 (S.D. Ohio Sept. 29, 2019) (citing *Faucher*, 17 F.3d at 176).  Accordingly, a reversal of the ALJ's decision and a judicial award of benefits are warranted.

**IT IS THEREFORE ORDERED THAT**:

1.  The Commissioner's non-disability finding is REVERSED;

2.  This matter is **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for payment of benefits consistent with this Decision and Entry; and

3.  The case is terminated on the Court's docket.

November 20, 2019                                    *s/Sharon L. Ovington*
                                                     Sharon L. Ovington
                                                     United States Magistrate Judge